My name is Glenda Carey and I represent Mr. Benjamin Noyakuk. Mr. Noyakuk filed his petition for habeas corpus two days past the statutory deadline. He is entitled to equitable tolling if he can show two things. One, that he has been pursuing his rights diligently. And two, that some extraordinary circumstance stood in his way and prevented him from filing. Determining whether equitable tolling is justified, is warranted, is a very fact-specific inquiry. So I would like to start by detailing some of the important facts in this case and then discussing Mr. Noyakuk's diligence and finally focusing on the extraordinary circumstance in this case. So the important personal facts. Mr. Noyakuk had no prior felonies before his involvement in this case. He had no experience in post-conviction remedies, no experience in the federal system. He was incarcerated. He had no access to outside legal resources. He was not aware of his federal remedies at all. He completely relied on his publicly appointed attorney, Mr. Greg Carvin. And that was a relationship, attorney-client relationship, that lasted over six years. And they communicated over the phone. There was a very trusted relationship. There wasn't a lot of writing, written letters back and forth, but it was a phone communication. Mr. Carvin, in his affidavit, he stated that he got to know Mr. Noyakuk very well. They talked on the phone almost every Friday. And over the course of six years, that's an extraordinary amount of communication. Ms. Carey, I have a lot of empathy for someone in your client situation, but what's described in the briefs here and what I see in the record is, at most, attorney negligence. Do you disagree with that? I do disagree with that. Why is that? Because what Mr. Carvin told Mr. Noyakuk was that he had no further remedy at all. He was done. Let's say that's true. I mean, because he was only hired as trial counsel, that may actually technically be correct, because he wasn't hired to do a habeas. But let's assume for a minute he was hired to do both. Let's just say he was just flat-out wrong on the time that was remaining or what needed to be done. That's negligence. That's not a gross miscarriage of justice. That is plain negligence. Ours and that of almost every other circuit says that doesn't meet the first prong here, does it? I think that Mr. Noyakuk was in a worse position than those who have hired an attorney and the attorney was negligent. The attorney, there's a case law that's abandonment. There's no abandonment here, though. Right. But he's in a worse position than those who are abandoned. Why? Because those individuals know that they have a right to habeas corpus. They know that some of them, they know the deadline. They tell the attorney the deadline. The attorney does nothing. They are on top of it. But here, Mr. Noyakuk, by reasonably relying on his attorney, had no idea that he had the right to federal habeas corpus. As I understand the evidence that we have here in front of us, we have a statement by Mr. Noyakuk and then we have the affidavit by the attorney. I think I'm understanding that evidence properly, that it's an affirmative misrepresentation by the attorney to Mr. Noyakuk that you've lost your appeal and there is nothing else that we can do. Understood by Mr. Noyakuk and indeed understood by the attorney as nothing else that we can do, including habeas. I mean, the attorney says, I'm a little bit astounded by this, but nonetheless the attorney says, I do know the possibility of federal habeas relief never crossed my mind at the time I spoke to him. I had no experience with federal habeas cases. It did not occur to me that some review of the suppression issues through a habeas case was a possibility. So what we have is his lawyer has affirmatively told him, you're done, and of course it's wrong. Now, do we have cases that allow relief here? I understand we've still got to get over the diligence problem, but in terms of the lawyer is just making a flat-out error that clearly constitutes malpractice. I mean, this is ineffective assistance to counsel if I've ever seen it. Is that enough? Yes. I believe it is. I can't cite you to a case that has specific similar facts. Before you finish your answer to Judge Fletcher, could you clarify something for me? My understanding is that Mr. Parvin, is that his name? Yes. Mr. Parvin was hired only through the trial and the direct appeal. His engagement did not go beyond that. So his role was completed. He had completed the trial. He had completed the direct appeal. Correct. Is that correct? Yes. So the context in which you answered Judge Fletcher's inquiry, I think, needs to be framed in terms of the engagement that this guy had. He was an attorney for all purposes. He was engaged for these two things. Fairly wrong. Fairly wrong about what was done in habeas. But the question is, is this negligence? Is it malpractice? But does it rise to the level of attorney misconduct that is so grossly inappropriate that it rises to the level of at the standard? Yes, it does. Because the focus is on what Mr. Noyeka had a reasonable right to rely on. He had a trusted relationship with his attorney. His attorney affirmatively told him bad advice, egregious advice. This is not a mere deadline error or something minor. This is beyond the pale of what an attorney should be able to convey to his client. And because of their relationship, because of he's the only attorney he has, the focus is not on whether or not Mr. Harvin was ñ the focus is not on him, whether he's negligent or malpractice and things like that. It's on what Mr. Noyeka reasonably had the right to rely on. And it's a fact-specific inquiry as to him and his circumstances, and he's relying on his attorney who gives him bad advice. The evidence is solid that he trusted him. He threw away his paperwork, and the case law is that not having your paperwork is a reason for tolling. But his reliance on Mr. Harvin is reasonable under these circumstances. And so I think the focus is not on Mr. Harvin's bad advice, not on Mr. Harvin himself, but on what the client could, under the circumstances, reasonably rely on. And that's why I think it's comparable to the abandonment cases because they're the ñ Well, I'm not sure it is comparable. In an abandonment case, you know you don't have a lawyer. And at that point, you better figure out, what am I supposed to do in the absence of a lawyer? Here he has a lawyer, and the lawyer has told him something. It turns out to be dead wrong. So I think he's worse off than in an abandonment case. I agree with that. He is worse off. Yeah, sure. And ñ yeah. Well, let's go on to the second part of this. I'm not sure I follow your point as to the first prong. But in terms of his own diligence, if I understand it, he learned ñ your client learned about the possibility of a habeas appeal a month before the deadline. But he didn't do anything about it. Oh, he did do something about it. What did he do? Immediately he called his prior attorney. He called Greg Parvin's office, who's no longer there. He spoke to an attorney. He asked for his paperwork. So he did that immediately. He received nothing for two weeks, so he called back. I think that shows extreme diligence under these circumstances. He didn't sit for months like some of these cases show. He called him back immediately. He jumped on it, and he said, I need the papers. So then ñ and Spitzin talks about it. You know, you can just hold even that two weeks that he had to wait for that time. Trace this more. Okay, so he finally learns from a fellow prisoner, well, wait a minute, what about habeas? He calls Parvin's office. Parvin isn't there any longer. He asks for the papers. Just run us through the timeline as to everything that happens. August 1st, okay, so sometime in July. We don't have the exact date. Sometime in July, he learns of habeas. He calls. Nothing happens. Two weeks later, he calls back. August 1st is when he talks to the secretary there, and she says, oh, yeah, I've got your paperwork. I'll mail it to you. So they mail it August 1st, 2007. He's at Spring Creek Correctional Center, Seward. They come from Nome. We don't know exactly what day he gets them. But August 9th, eight days later, he called the Federal Public Defender's Office, spoke to a competent attorney who told him to file them immediately. He did so that day. So August 9th, he files, which is two days later. And so he's two days late. So the papers are sent from Nome on what date? August 1st. And he has seven days from the time the papers are sent to file in order to be timely? Six days, August 1st until the 7th. And we don't know when the papers arrive. We know they were sent from Nome on the 1st, and we can assume at least it takes a few days. Yes, definitely. Got it. And then for the prison, do they hand out mail over the weekend? We don't know. But I think he was extraordinarily diligent under these circumstances, but all that's required is reasonable diligence. And then after that, he gets somebody at the jail to write it for him, even though his attorney says file it now. What this shows is his lack of familiarity with the criminal justice system. And so I think for him, for this individual, what he did was extraordinarily diligent and reasonably relied on his attorney. He needed help even to file that pro se petition. Do we know anything about his educational level? I know we've heard that he had no prior experience in the criminal justice system.  Okay. Sorry about that. Why don't we hear from the other side and then we can reach out. Okay, thanks. May it please the Court. My name is Eric Rangsmith, and I'm representing Respondent Appellee Craig Turnbull in this case. The sole issue presented in this case is, did the petitioner's attorney engage in misconduct so egregious as to enable the petitioner to invoke the doctrine that Google told him? Well, I'm not sure that's quite the framework. It's whether there are extraordinary circumstances. Well, that was the issue that was certified. But, yes, that's a component of that. But that is to say, you can sometimes have extraordinary circumstances that do not involve egregious misconduct by the attorney. Yes, sir. So the standard is extraordinary circumstances. Egregious misconduct would be one thing that would satisfy. Yes, sir. That's correct. But anything that involves an attorney may or may not involve egregious misconduct, but nonetheless, depending on the circumstances, could conceivably be extraordinary circumstances. Do you follow me? One more time, Your Honor. Well, the standard is extraordinary circumstances. Yes. If there's an attorney involved, and there's been egregious misconduct by the attorney, that is extraordinary circumstances. But sometimes you'll have an attorney involved, and there may not be egregious misconduct. But depending on the facts, there may nonetheless be extraordinary circumstances. I'm not sure about that last part, Your Honor. Well, I understand you're not. But what I'm after is that it seems to me that the standard is extraordinary circumstances. The standard does not be egregious misconduct, although egregious misconduct may satisfy the standard. Yes, sir. However characterized, under the facts of this case, Noye Cook has failed in his burden of establishing that he is entitled to evade the statute of limitations. What isn't an extraordinary circumstance? He's got a lawyer who's been with him for six years, who's litigated, so far as we can tell, not only with diligence, but with some skill, all the way through the mandatory appeal. He trusts the attorney, and I think he has, up until now, good reason to trust the attorney. The attorney tells him, and this appears to be the evidence in the record, both from Mr. Noye Cook and from Mr. Parvin, the attorney says there's nothing else you can do. He relies on the attorney, and he waits for 11 months, knowing because he was told there's nothing else he can do. And then he's told, wait a minute, there is something he can do. Now, putting to one side the diligence question, I don't get it. Why isn't that an extraordinary circumstance in the sense that he has a lawyer who he's trusted, he just obeys what the lawyer says, he has no other reason, he's an unsophisticated person about the criminal justice system? If that's not an extraordinary circumstance, there's a certain amount of basic unfairness going on here. I think for multiple reasons, Your Honor. First, on the minor point of his prior experience with the criminal justice system, he was experienced with the criminal justice system. He had convictions for minor consuming alcohol, followed by conviction for disorderly conduct, and specifically in the year just prior to the murder, he had three convictions for domestic violence. So this wasn't somebody who was not familiar with the criminal justice system, attorneys, judges, and rights that he could assert when he chooses. Second, going to the main point of his relationship with his attorney, Parvin did not represent him on his petition for hearing to the Alaska Supreme Court. That was the other attorney in the office. It is true that he received a copy of the petition and a copy of the order, and he asked his attorney, quote, I asked Parvin, not the attorney who actually litigated it in the Alaska Supreme Court, what the order meant. So the attorney's response has to be understood in that context. The question wasn't to his attorney, well, can I go file a state post-conviction release action? Am I able to file a federal habeas action now? All he was asking was, what does this order mean? And understood in that context, his attorney reasonably said, that means your appeals are finished. I just read the affidavit from Parvin. He said that, but he also said there's nothing else you can do. That's true, and I believe objectively reading that, what he was saying was there's nothing else to do in that appeal. Let me just read to you, Mr. Parvin. I understand, this is Parvin, I understand that Mr. Nuttercook states that during that telephone call, I said something to the effect that we had finished his appeals, and there was nothing else we could do. I do not have a detailed recollection of what was said during that conversation. I believe that Mr. Nuttercook's account of what he understood is reliable. I probably did tell him that his appeals were over, that we'd been turned down in the Alaska Supreme Court, and had nowhere else to seek review of the suppression issues. And had nowhere else to seek review. That's what he says he told him. And to begin with that, he says he doesn't recall what he told him. But more importantly is what Noyakook recalls from that conversation. And nowhere in Noyakook's affidavit does he mention that he did not believe he had the right to file a statement. I don't have my hands on the Noyakook affidavit. Do you have a page citation for that? I don't have that. Well, we better know what he said he heard and so on. If you could find it, I'd appreciate it. Sorry, Your Honor. Take your time. I think it's important. It's at ER 145 if you're looking for the ER site. Thank you, Your Honor. Okay. So read paragraph 8. I called Greg Parvin and we talked about what the order meant. Greg told me there was nothing else to do. The appeals were finished. I understood that there was nothing else I could do. I never spoke to him after that. I never received any more paperwork from him either. He never asked Parvin anything about post-conviction relief. Parvin never told him, understood from Noyakook's standpoint. It does appear that he never asked him. On the other hand, if I've never seen a giraffe, how am I supposed to ask about can I see a giraffe? I mean, he doesn't know about it. So how is he supposed to say, well, what about post-conviction relief? What about a giraffe? I've never even heard of a giraffe. At this point in the litigation, Your Honor, Parvin was only hired to handle his trial and direct appeal. No, I understand that, but what I'm trying to figure out is what do we know about what was told to him and what do we know about what he understood? We've got evidence from him and we've got evidence from Parvin that he was told there was nothing else that could be done. I take that as it is. He was told there was nothing else that could be done, and he relies on it. The question is, what's the consequence of that? So would you assume for the purposes of your answer that he was told there's nothing else that can be done, not merely told your appeals are finished? What's the consequence? The consequence, well, there are two consequences. He still has to demonstrate the extraordinary circumstance that has justified his actions, and two, that he was reasonably diligent throughout the entire time period in which he was required to file. The question and the focus in some of the briefing has been on the last month, July, and then into August, when he finally decided to do something. But absent is any discussion of the prior 11 months when he took no actions, did not hire any other attorney, ask any questions of any other attorney, of any legal aid society, of any other prisoner during that time period when he could have filed a pro se application himself or hired an attorney or sought to hire an attorney. So you're saying that even though he had been told by an attorney that he trusted there's nothing else he could do, he's supposed to pursue further remedies, hire another attorney, even though he's been told there's nothing else that could be done. Do we have any evidence in that 11-month period that he was told by anyone that there's a possibility of post-conviction relief? No, Your Honor, but it's not Turnbull's burden to demonstrate equitable tolling is warranted. It's Noyakuk's burden to demonstrate what he did throughout the entire time period. No, he did nothing. The record says he did nothing for 11 months. That's true, Your Honor. Relying on the attorney who told him there's nothing you can do. So he did exactly what the attorney told him to do, which was to say nothing, which was to do nothing. As a legal predicate for some of the court's concerns, though, I would note that neither under Alaska state law nor under federal law has Noyakuk cited any authority that demonstrates the actions his attorney took were improper. Well, let's assume for a moment that they were. The attorney was clearly wrong on the law, clearly wrong. Clearly we have a man who relied upon what his attorney said. I think that the trouble here, at least from my perspective, is this is not a nasty, mean attorney, some kind of a wasteful with a license he should never have had. He actually liked Mr. Noyakuk, he really wanted to be helpful, and so he just didn't know about this area, he blew it. But that's called malpractice generally, and there are legions of cases that say malpractice alone is insufficient to get over this issue of equitable tolling in AEDPA cases. Are you familiar with any cases that would say to the contrary in our or any other circuit? No, Your Honor. All of the cases that I am aware of that were cited in the briefing that have been issued by this circuit and circuits around the country since the Holland case by the United States Supreme Court have all continued to adhere to the garden variety negligence standard is not sufficient to trigger equitable tolling. If negligence, maybe even significant negligence were the standard, would that not completely consume the one-year statute? I mean, how could anybody not get benefits of equitable tolling  Yes, Your Honor. As the exceptions then would follow the rule. And I think it's to go back to just a moment, Your Honor, to the merits. Everybody, Parvin himself, why I'm having trouble with the court's analysis here is neither Parvin… I wish I were the court. You may be having trouble with my analysis. …is that neither Parvin nor Noyakuk interpreted the exchange about the appeals to be talking about post-conviction relief. Parvin candidly stated, the thought never crossed my mind that he was asking me about post-conviction relief, specifically federal habeas law. He admits that wasn't the focus of… I don't think that's going to get you anywhere. I looked at that possibility as well. He really, you know, he was only hired for this other thing. But let's just assume for purposes of our discussion that Mr. Parvin blew it. He just blew it. He should have known about this. He didn't. He misrepresented, as my colleague has indicated, he misrepresented to a guy who relied on him. Let's assume for purposes of EDPA that he clearly was mistaken. He clearly made a representation to Mr. Noyakuk. Mr. Noyakuk relied upon that. He disposed of his legal papers in reliance on that. And it was only in the prison that he heard from another inmate who asked him how his appeal was going, talked to him apparently for the first time. This is the giraffe issue. He heard about the giraffe for the first time in the jail. And only then did he go forward. Under those circumstances, does that constitute extraordinary circumstances under the case law or any other circuit that you're aware of? No, Your Honor. I think critically there's been no case cited by Noyakuk nor as an officer of the court I'm representing that I found any case under anywhere near similar circumstances where a court has found that this type of negligence to the extent it was negligence constitutes... What if we change the facts ever so slightly? Mr. Parvin, under the facts or hypothetical facts I'm now giving you, over the course of six years has developed an enormous dislike for his client, Mr. Noyakuk. And he diligently pursues and conscientiously and with great effectiveness pursues all the way up to the Alaska Supreme Court. Somebody else in his office handles that last thing in the Supreme Court. And when Mr. Noyakuk calls him up and says, what's this order mean, Mr. Parvin, harboring a deep-seated animosity to his client, says, quite consciously misrepresenting the law that he knows to be the law, says there's nothing else you can do. And then everything else happens in exactly the same way as it has in fact happened. Is that extraordinary circumstances? Well, there's no evidence in the record to support that evidence. I'm not asking you to believe the story I just told you. It's the true story. It's a hypothetical story. But under my hypothetical story, is that an extraordinary circumstance? I don't believe so, Your Honor. Whoa. The reason being he was not his attorney at that time. The other attorney was representing him. He did not represent him in the Alaska Supreme Court. So it would be as if he had asked any other attorney that same question. My question has to do with the standard of view. District judge makes a finding that there are extraordinary circumstances or there are not. Is that an answer to a question of fact or a question of law? I believe it's both, Your Honor. There was no evidentiary hearing in this case. So the parties are agreeing as to what the facts are in the affidavits. Those have not been contested. And so to the extent— Extraordinary circumstances is like how long is a piece of string? Great question, but how do you find the answer? What is the answer? Now, is it a question of fact? Why would you look at Rule 52 and say the judge's finding was clearly erroneous? Or is it a question of law? Don't cop out like the Supreme Court does and say it's a mixed question. It is to the extent that where the facts aren't being contested, both parties are agreeing that these are the facts in the record. Therefore, this court is in the same position as the district court was and can review the legal issue de novo as to whether or not under these facts extraordinary circumstances exist to warrant equitable tolling. Now, I realize we've taken you over time, but I want to give you a chance. Is there anything about the description of the timeline after he learns that he has a post-convictional review that was described to us that you disagree with? No, Your Honor. The only point I would make in regards to that is the predicate basis for the delay was to obtain the records from his attorney's office. However, he did not need those, nor is it reflected in his two-sentence application that doesn't reference his crime, the case number, any facts in the record. The point being that he didn't need any records from his attorney's office to file his application as he did, which commenced his case for determining the date when the statute of limitations began to expire. Okay. Thank you very much. Ms. Carey, you have saved some time. Thank you. I'd like to direct your attention to one of the statements in the Spitzin case, which was quoted from the Baldayek 11th Circuit case, which states that equitable tolling is appropriate when an attorney's actions are, quote, far enough outside the range of behavior that reasonably could be expected by a client that they may be considered extraordinary. So when we have actions that are far enough outside the range, and I submit that not knowing about the federal system is far enough outside the range, that it's going to be reasonably relied on the client. So we're considering what the attorney did, but still the focus is on the client's reasonable expectations. There's two reasons why it's extraordinary here. I want to make sure I understood what you just said. Are you saying that the standard for judging whether an attorney has committed extraordinary negligence in this case is the client's expectation? Well, it's not whether or not necessarily whether. You don't have to make a determination that Parvin committed negligence or extreme negligence. We're talking about a client that's never seen a giraffe. How can he judge whether the giraffe is there or not there if he's never seen one? Isn't it the standards of the legal community that we're talking about, whether what he did was so far outside the mainstream of attorney misconduct that it's extraordinary? Isn't that the standard we're talking about? That's one way of looking at it. Isn't that the only way to look at it? No, I think another way to look at it is from the client's perspective. What's reasonable for him to rely on? But he doesn't know about giraffes, to use my colleague's metaphor here. And that's why it's reasonable for him, when he's told there's nothing left to do, it's reasonable for him to rely on that. Holland v. Florida, the more recent case which there was some supplemental briefing on, that case makes clear that to be in an extraordinary circumstance, the conduct doesn't have to entail bad faith on the attorney, doesn't have to entail dishonesty, doesn't have to entail divided loyalty or mental impairment on the part of the attorney. It can be a good faith mistake, an honest mistake, consistent loyalty to the client, and sound mental functioning on the part of the attorney. And that's what we have here. But it still can be an extraordinary circumstance, justifying equitable polling. And because the focus is on the defendant, the client, the deception isn't required. I guess I have less than a minute left. I just would like to emphasize that this is equity. Habeas corpus, both as well as tolling of the statute, are equitable remedies. There's no bright-line rules. It's very fact-specific. In the words of Justice Frankfurter, equity eschews mechanical rules. It depends on flexibility. And I think the circumstances here definitely warrant that. Are you aware of any cases that say that a prisoner's lack of understanding that he had a right to file a habeas petition is a ground for granting equitable tolling? Not that specifically. I don't know of any either. But it is why, when I focus on the defendant, and why the abandonment cases seem even less egregious than what happened here, is because those individuals had an attorney, had knowledge of what their rights were, and the attorney let them down. And here we have a situation. Through no fault of his own, he had no knowledge. Well, he had knowledge. It just turned out to be wrong because the attorney told him so. I mean, maybe it's knowledge. Okay. Any other questions? Thank you. Thank both sides for quite good arguments in a hard case. Noika v. Turnbull is now submitted for decision. The next case on our argument calendar is Henry. We will take a five-minute recess in order to allow the cameras, whatever it is, to be set up, because it's the Henry case that's going to be on TV watched by millions of people.
judges: Goodwin, Fletcher, Smith